# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IRVIN MURRAY, MAURICE SCOTT, DOLORES MCFADDEN, FAITH ANNE BURDICK, EDWIN JONES, and ALL OTHER HOMELESS RESIDENTS OF THE ENCAMPMENTS AT VON COLLN FIELD, JEFFERSON AND RIDGE, and the AZALEA GARDENS | : : : : : : : | |
| Plaintiffs, | : | Case Number |
| v. | : | 2:20-cv-04018-ER |
| | : | |
| THE CITY OF PHILADELPHIA | : | |
| and | : | |
| MAYOR JIM KENNEY | : | |
| Defendants. | : | |
| | : | |

## WITNESS LIST

Defendants, the City of Philadelphia and Mayor James Kenney, reserve the right to call the following witnesses in support of their Response in Opposition to Plaintiffs' Motion for a Temporary Restraining Order, as well as additional witnesses in rebuttal if it may become necessary:

Eva Gladstein
Deputy Managing Director for Health and Human Services for the City of Philadelphia

Liz Hersh
Director of Homeless Services for the City of Philadelphia

Dennis Boylan
President of the Board of the Logan Square Neighborhood Association of Philadelphia

# EXHIBIT 1

HANDBILL

# NOTICE

You are not authorized to use Von Colln Playground and Field or other Fairmount Park property in the City of Philadelphia to erect a tent or other structure, or to otherwise encamp or stay, at this location. The conditions violate Philadelphia Code Title 4 (Property Maintenance, Administrative, and Fire Codes); Philadelphia Code §§ 6-205, 6-206, 10-615, 15-601, and 15-604; the regulations governing the Fairmount Park system, and the Mayor and Board of Health's Emergency Orders and Regulations Governing the Control and Prevention of COVID-19. Since mid-June, you have been warned that you cannot continue to occupy this space with tents and other structures.

The individuals currently occupying Von Colln Playground and Field have expressed the intention to use Von Colln Playground and Field and other Fairmount Park property for long-term outdoor living, for a vulnerable population. Von Colln Playground and Field is zoned as SP-PO-A, which does not allow for it to be used for long-term outdoor living for a vulnerable population. *See* Phila. Code §§ 14-407 and 14-602(6). In addition, living facilities for vulnerable populations must meet stringent Building Code, Fire Code, and other licensing requirements prior to opening. *See* Phila. Code Titles 4, 6, 9, and 14.

As revealed by the overdose death at the encampment on Von Colln Playground and Field, there has been unlawful drug use in the encampment. Drug use can lead to infection at the injection site, transmittal of communicable diseases among users, and the spread of disease to the general public. Drug use, which can result in overdoses, also increases the need for first responders to go to the premises, putting those first responders at risk.

Drug sales are linked to violence and risk of injury or death, including injury or death to community members who are not involved in drug use or sales. The increased risk of violence has additional injurious effects on the entire neighborhood, including children.

In fact, in recent days, there have been two separate stabbing incidents near the encampment; both incidents remain under investigation. In the first incident, the victim, who was stabbed multiple times, was a resident of the encampment; as last reported, this victim remains in critical condition. In the second incident, the assailant is an individual who is experiencing homelessness. These incidents of extreme violence are troubling on their own, but they are particularly troubling in light of the apparent intent to invite children to the encampment as evidenced by the establishment and maintenance of a children's play area.

The conditions at the encampment are unsanitary, lacking any running water, which means there are inadequate handwashing, restroom, and other washing facilities. Siphoning off water from a City water fountain is neither a lawful nor appropriate source of running water. Neighbors and nearby businesses have reported that they are now seeing feces in parking lots and other public spaces throughout the area. Human excreta and the lack of adequate personal and domestic hygiene have been implicated in the transmission of many infectious diseases including cholera, typhoid, hepatitis, polio, cryptosporidiosis, ascariasis, and schistosomiasis. Regular handwashing, social distancing, and routine mask wearing are necessary to reduce the risk of the spread of COVID-19.

Residents of the encampment are using dirty and soiled bed linens. Dirty and soiled bed linens contain allergens such as dust mites, pet dander, mold, and bacteria. Allergens and like irritants can trigger skin conditions, asthmatic reactions, difficulty breathing, trouble sleeping due to labored breathing and cough, and transmission of communicable diseases, including COVID-19, which spreads easily through coughs and sneezes. Allowing individuals from different households to encamp, without appropriate social distancing and other health safety measures, and in excess of the social restrictions on gatherings, can cause COVID-19 to spread. In addition, inviting individuals from different households to routinely visit to bring materials to Von Colln Playground could result in COVID-19 spreading throughout the community.

WRITTEN NOTICE FIRST DISTRIBUTED ON: July 10, 2020

There are inadequate food safety precautions which could lead to the outbreak of a food borne illness. Further, the use of grills and other cooking appliances in an area with densely packed tents, which are highly flammable, and surrounded by vegetation, presents a significant fire risk. The unlawful utility hook-up elevates the risk of fire.

The continued use of this property is damaging the land, trees, vegetation, and other Fairmount Park property that the City holds and maintains for the use and enjoyment of the general public.

The conditions pose an immediate hazard and danger to the life, health, safety, and welfare of the individuals in the tents, the nearby residents, first responders, and the public at large. Immediate compliance is necessary to protect the public health.

You must remove your property and leave this location as soon as possible but by no later than **JULY 17, 2020 AT 9:00 A.M.** Personal property and debris remaining at this location will be removed by the City of Philadelphia on **JULY 17, 2020 at 9:00 A.M**.

Personal property, as designated by the City of Philadelphia, will be stored by the City for no more than 30 days. All stored personal property not retrieved within 30 days will be considered abandoned and will be disposed of permanently. Debris and property deemed a hazard to the public health, safety, or welfare will be destroyed immediately.

Examples of personal property and examples of debris are as follows:

| PERSONAL PROPERTY | DEBRIS |
|---|---|
| • Tents | • Unsanitary or infested clothing, bedding, or tents and other items determined by the City to be a threat to public and/or municipal workers' health, safety, or welfare |
| • Stoves and grills | |
| • Pots, pans, and cooking utensils | |
| • Medicine | • Newspapers and cardboard |
| | • Loose paper and plastic debris |
| • Sleeping bags and blankets (must be sanitary and not infested) | • Food or other perishable items |
| • Clothing (must be sanitary and not infested) | • Garbage |
| • Backpacks | • Empty cans and bottles |
| • Hand-held tools | • Scrap metal |
| • Personal transport device | • Drug paraphernalia |
| • Vital documents, files, and folders | • Shopping Carts |

If you would like to seek assistance from the City of Philadelphia in finding alternative shelter, medical assistance, or other treatment, please call: **Homeless Outreach anytime at 215-232-1984 or the Department of Behavioral Health and Intellectual disAbility Services member hotline at 888-545-2600. If you do not have access to a telephone, you may reach the City by going to 1430 Cherry Street or 804 North Broad Street, Monday-Friday, 7AM -5PM.**

WRITTEN NOTICE FIRST DISTRIBUTED ON: July 10, 2020

# WALL POSTING

# NOTICE

## DATE POSTED:      7/10/2020

The City of Philadelphia has not authorized you to use this property to erect a tent or other structure, or otherwise camp, at this location.  The conditions pose a hazard to the life, health, safety, and welfare of the individuals in the tents, the nearby residents, and the public at large.   You must remove your property and leave this location as soon as possible but by no later than **JULY 17, 2020 AT 9:00 A.M.**

If you do not leave this location and remove your personal property by **JULY 17, 2020 AT 9:00 A.M.** you will be issued a citation by the City of Philadelphia for violating the Philadelphia Code under Titles 4, 6, 9, 10, 14, and 15, Fairmount Park's Regulations, and the Mayor and Board of Health's Emergency Orders and Regulations Governing the Control and Prevention of COVID-19.

Personal property and debris remaining at this location will be removed by the City of Philadelphia on **JULY 17, 2020 AT 9:00 A.M.** No extensions will be granted.

Personal property, as designated by the City of Philadelphia, will be stored by the City for no more than 30 days.  All stored personal property not retrieved within 30 days will be considered abandoned and will be disposed of permanently.

Debris and property deemed a threat to the public health, safety, or welfare will be destroyed immediately.

**For Assistance in Seeking Shelter or Services: Homeless Outreach Hotline at 215-232-1984 or the Department of Behavioral Health and Intellectual disAbility Services member hotline at 888-545-2600**

# EXHIBIT 2

# HANDBILL

# SECOND NOTICE

You are not authorized to use Von Colln Playground and Field, the Azalea Garden, any portion of the Benjamin Franklin Parkway, or other Fairmount Park property in the City of Philadelphia (hereinafter, collectively, "Fairmount Park Property") to erect a tent or other structure, or to otherwise encamp or stay, at this location.  The conditions violate Philadelphia Code Title 4 (Property Maintenance, Administrative, and Fire Codes); Philadelphia Code §§ 6-205, 6-206, 10-615, 15-601, and 15-604; the regulations governing the Fairmount Park system, and the Mayor and Board of Health's Emergency Orders and Regulations Governing the Control and Prevention of COVID-19.  Since mid-June, you have been repeatedly warned that you cannot occupy Fairmount Park property with tents and other structures.  In addition, on July 10, 2020, this property was posted with a notice directing you to remove your possessions and leave this area by no later than July 17, 2020.

The individuals currently occupying Fairmount Park Property have expressed the intention to use Fairmount Park Property for long-term outdoor living, for a vulnerable population.  Fairmount Park Property is zoned as SP-PO-A, which does not allow for it to be used for long-term outdoor living for a vulnerable population.  *See* Phila. Code §§ 14-407 and 14-602(6).  In addition, living facilities for vulnerable populations must meet stringent Building Code, Fire Code, and other licensing requirements prior to opening.  *See* Phila. Code Titles 4, 6, 9, and 14.

There has been consistent unlawful drug use in the encampments.  There has been at least one overdose death in the encampment.  If drugs are used intravenously, it can lead to infection at the injection site, transmittal of communicable diseases among users, and the spread of disease to the general public.  In addition, it has been observed that occupants of the encampment have been using a drug commonly known as K-2.  When a person uses K-2, they experience severe cognitive, behavioral, and physical symptoms including exhibiting violent behavior, increased heart rate and other cardiovascular symptoms, exhibiting disorientation and suicidal tendencies, and experiencing severe, repeated vomiting.  Repeated vomiting can lead to asphyxiation and/or dehydration, an especially serious condition given the severe heat that Philadelphia is presently experiencing.

Drug use, which can result in overdoses, also increases the need for first responders to go to the premises, putting those first responders at risk.  In fact, between June 25 and July 29, 2020 there have been 21 calls for emergency services, inclusive of calls responding to complaints of overdose and symptoms of overdose.

Drug sales are linked to violence and risk of injury or death, including injury or death to community members who are not involved in drug use or sales.  The increased risk of violence has additional injurious effects on the entire neighborhood, including children.

In fact, there were two separate stabbing incidents near the encampment; both incidents remain under investigation. In the first incident, the victim, who was stabbed multiple times, was a resident of the encampment; that victim was in critical condition when initially in the hospital.  In the second incident, the assailant is an individual who is experiencing homelessness. These incidents of extreme violence are troubling on their own, but they are particularly troubling in light

WRITTEN NOTICE FIRST DISTRIBUTED ON: July 10, 2020
WRITTEN NOTICE RE-DISTRIBUTED ON: August 17, 2020

of the presence of some children in the encampment and the apparent intent to invite additional children to enter and remain in the encampment as evidenced by the establishment and maintenance of a children's play area.

The conditions at the encampment are unsanitary, lacking any running water, which means there are inadequate handwashing, restroom, and other washing facilities. Siphoning off water from a City water fountain is neither a lawful nor appropriate source of running water. Neighbors and nearby businesses have reported that they are now seeing feces in parking lots and other public spaces throughout the area. Human excreta and the lack of adequate personal and domestic hygiene have been implicated in the transmission of many infectious diseases including cholera, typhoid, hepatitis, polio, cryptosporidiosis, ascariasis, and schistosomiasis. Regular handwashing, social distancing, and routine mask wearing are necessary to reduce the risk of the spread of COVID-19.

Residents of the encampment are using dirty and soiled bed linens. Dirty and soiled bed linens contain allergens such as dust mites, pet dander, mold, and bacteria. Allergens and like irritants can trigger skin conditions, asthmatic reactions, difficulty breathing, trouble sleeping due to labored breathing and cough, and transmission of communicable diseases, including COVID-19, which spreads easily through coughs and sneezes. Allowing individuals from different households to encamp, without appropriate social distancing and other health safety measures, and in excess of the social restrictions on gatherings, can cause COVID-19 to spread. In addition, inviting individuals from different households to routinely visit to bring materials to Fairmount Park Property could result in COVID-19 spreading throughout the community.

There are inadequate food safety precautions which could lead to the outbreak of a food borne illness. Further, the use of grills and other cooking appliances in an area with densely packed tents, which are highly flammable, and surrounded by vegetation, presents a significant fire risk. The unlawful utility hook-up elevates the risk of fire.

By remaining in this encampment, the occupants are at grave risk of being killed or injured by severe weather events such as hurricanes and tropical storms. High winds can topple trees and produce deadly flying debris. Heavy rains can produce flash floods. Lying and/or sitting on the ground in tents, that are close together, during a weather event exponentially increases the risk that one or more encampment occupants could be struck by lightning and/or electrocuted. That risk is further increased by the presence of the unlawful utility and water hook-ups, both of which are excellent conductors of electricity. In fact, since this encampment was erected, Tropical Storm Isaias struck Philadelphia and caused heavy flooding throughout and around the portions of the Fairmount Park Property that the encampment occupies. In light of the fact that scientists are calling for an "extremely active 2020 Atlantic hurricane season," it is profoundly dangerous for anyone to remain in the encampment.

The continued use of Fairmount Park Property is damaging the land, trees, vegetation, and other Fairmount Park Property that the City holds and maintains for the use and enjoyment of the general public.

The conditions pose an immediate hazard and danger to the life, health, safety, and welfare of the individuals in the tents, the nearby residents, first responders, and the public at large. Immediate compliance is necessary to protect the public health.

WRITTEN NOTICE FIRST DISTRIBUTED ON: July 10, 2020
WRITTEN NOTICE RE-DISTRIBUTED ON: August 17, 2020

You must remove your property and leave this location as soon as possible but by no later than **AUGUST 18, 2020 AT 9:00 A.M.** Personal property and debris remaining at this location will be removed by the City of Philadelphia on **AUGUST 18, 2020 at 9:00 A.M.**

Personal property, as designated by the City of Philadelphia, will be stored by the City for no more than 30 days. All stored personal property not retrieved within 30 days will be considered abandoned and will be disposed of permanently. Debris and property deemed a hazard to the public health, safety, or welfare will be destroyed immediately.

Examples of personal property and examples of debris are as follows:

| PERSONAL PROPERTY | DEBRIS |
|---|---|
| • Tents | • Unsanitary or infested clothing, bedding, or tents and other items determined by the City to be a threat to public and/or municipal workers' health, safety, or welfare |
| • Stoves and grills | |
| • Pots, pans, and cooking utensils | |
| • Medicine | • Newspapers and cardboard |
| • Sleeping bags and blankets (must be sanitary and not infested) | • Loose paper and plastic debris |
| | • Food or other perishable items |
| • Clothing (must be sanitary and not infested) | • Garbage |
| • Backpacks | • Empty cans and bottles |
| • Hand-held tools | • Scrap metal |
| • Personal transport device | • Drug paraphernalia |
| • Vital documents, files, and folders | • Shopping Carts |

If you would like to seek assistance from the City of Philadelphia in finding alternative shelter, medical assistance, or other treatment, please call: **Homeless Outreach anytime at 215-232-1984 or the Department of Behavioral Health and Intellectual disAbility Services member hotline at 888-545-2600. If you do not have access to a telephone, you may reach the City by going to 1430 Cherry Street or 804 North Broad Street, Monday-Friday, 7AM -5PM.**

WRITTEN NOTICE FIRST DISTRIBUTED ON: July 10, 2020
WRITTEN NOTICE RE-DISTRIBUTED ON: August 17, 2020

WALL POSTING

# SECOND NOTICE

**DATE FIRST POSTED:** _____7/10/2020_____

**DATE RE-POSTED:** _____8/17/2020_____

The City of Philadelphia has not authorized you to use this property to erect a tent or other structure, or otherwise camp, at this location.  The conditions pose a hazard to the life, health, safety, and welfare of the individuals in the tents, the nearby residents, and the public at large.   You must remove your property and leave this location as soon as possible but by no later than **AUGUST 18, 2020 AT 9:00 A.M.**

If you do not leave this location and remove your personal property by **AUGUST 18, 2020 AT 9:00 A.M.** you will be issued a citation by the City of Philadelphia for violating the Philadelphia Code under Titles 4, 6, 9, 10, 14, and 15, Fairmount Park's Regulations, and the Mayor and Board of Health's Emergency Orders and Regulations Governing the Control and Prevention of COVID-19.

Personal property and debris remaining at this location will be removed by the City of Philadelphia on **AUGUST 18, 2020 AT 9:00 A.M.**  No extensions will be granted.

Personal property, as designated by the City of Philadelphia, will be stored by the City for no more than 30 days.  All stored personal property not retrieved within 30 days will be considered abandoned and will be disposed of permanently.

Debris and property deemed a threat to the public health, safety, or welfare will be destroyed immediately.

**For Assistance in Seeking Shelter or Services: Homeless Outreach Hotline at 215-232-1984 or the Department of Behavioral Health and Intellectual disAbility Services member hotline at 888-545-2600**

# EXHIBIT 3

**Subject:** Housing Now Protest Camp
**Date:** Saturday, June 13, 2020 at 10:21:12 AM Eastern Daylight Time
**From:** Eva Gladstein
**To:** jose marco, Sterling Johnson
**CC:** Brian Abernathy, James Engler

Dear Sterling and Jose,

We have been told that you are representatives of the HOUSING NOW PROTEST CAMP on the Parkway. If you are not the right people to reach out to please let me know if there is someone else with whom we should communicate.

We have heard you say that you do not trust government and would rather be left alone. You know that is not possible. You won't be able to stay camping on the Parkway indefinitely.

We would like to work with you to find a pathway forward toward a peaceful, fair solution. That can only be achieved by talking to each other. We are asking you – or other representatives of the group to meet with us. We agree that we should conduct any discussions with full transparency, including release of statements to the press.

We have seen your demands and principles. We are coming to the table with a starting offer to show good faith that we are entering this conversation in earnest:

1. We have hotel rooms available right now for people who are homeless and at high risk of COVID – those who are 65 or older or have underlying health conditions; more hotel rooms will be available for other homeless individuals in the near future.
2. We respect your right to be self-governing. We will seriously consider acting on your desire to establish a temporary sanctioned encampment. Please tell us what your plans are for a camp that is safe for the people there and the surrounding community and locations you would like us to consider.
3. We are willing to issue an executive order regarding tiny home villages. We will work with you to set up the first such place.
4. We agree that the police should have less of a role with homelessness. We would like to hear from you what that means and see what actions we can take both immediately and long-term.

We will not be able to meet all your demands. But we can and will make life better for people of color and people who are homeless if you or other representatives of the group will work with us. Please email me back with your response so we can get started.

Regards,

Eva

Eva Gladstein (she/her/hers)
Deputy Managing Director for Health & Human Services
City of Philadelphia
Municipal Services Building, Suite 1430
1401 John F. Kennedy Blvd.
Philadelphia PA 19102
Office: 215 686 3696

# EXHIBIT 4



**CITY OF PHILADELPHIA**

**OFFICE OF THE MAYOR**
**DEPARTMENT OF PUBLIC HEALTH**

### EMERGENCY ORDER TEMPORARILY PROHIBITING OPERATION OF NON-ESSENTIAL BUSINESSES AND CONGREGATION OF PERSONS TO PREVENT THE SPREAD OF 2019 NOVEL CORONAVIRUS (COVID -19)

### <u>ORDER NO. 2</u>

**WHEREAS**, on March 6, 2020, in response to the 2019 novel coronavirus disease, COVID-19, the Governor of Pennsylvania issued a Proclamation of Disaster Emergency; and

**WHEREAS**, on March 11, 2020, the World Health Organization declared the COVID-19 outbreak a pandemic, or global epidemic; and

**WHEREAS**, on March 11, 2020, the Mayor of Philadelphia issued a Declaration of Extraordinary Circumstance that allows City regulations related to addressing the pandemic to become effective immediately upon transmission to the Department of Records; and

**WHEREAS**, on March 12, 2020, the Board of Health added COVID-19 to the City's list of reportable and quarantinable diseases; and

**WHEREAS**, on March 12, 2020, the Commissioner of Health issued an Emergency Order that forbids gatherings of 1,000 or more persons to prevent the spread of COVID-19; and

**WHEREAS**, on March 13, 2020, the Mayor issued a Declaration of Emergency related to COVID-19 that, in conjunction with the Governor's proclamation, enhanced the City's ability to take action to address the pandemic's impact in Philadelphia;

**WHEREAS**, on March 16, 2020, the Governor of Pennsylvania announced that the Commonwealth of Pennsylvania is imposing mitigation efforts to curtail the spread of COVID-19 uniformly across the Commonwealth, calling upon nonessential businesses (excluding business such as grocery stores and medical facilities) to close beginning at midnight Tuesday March 17, 2020; and

**WHEREAS,** on March 17, 2020 the Mayor and the Commissioner of Health jointly issued an Emergency Order prohibiting operation of non-essential businesses to prevent the spread of COVID-19; and

**WHEREAS,** on March 19, 2020 the Governor of Pennsylvania announced that the Commonwealth of Pennsylvania ordered all non-life-sustaining businesses in Pennsylvania to close their physical

locations as of 8:00 p.m., March 19 to slow the spread of COVID-19 and that enforcement actions against businesses that do not close physical locations will begin at 12:01 a.m. Saturday, March 21; and

**WHEREAS,** the Governor of Pennsylvania updated the aforementioned order and list of life-sustaining and non-life sustaining businesses on March 20, 2020 and again on March 21, 2020; and

**WHEREAS**, COVID-19 is easily transmitted, especially in group settings, including by people with no symptoms or mild symptoms who may unknowingly spread the disease to others; and

**WHEREAS**, COVID-19 may remain viable for hours to days on surfaces made from a variety of materials located in businesses and other places, thus contaminating certain property and places; and

**WHEREAS**, COVID-19 can cause severe disease and death, particularly in older adult and other vulnerable populations; and

**WHEREAS**, pursuant to authority set forth in The Philadelphia Code, inherent authority set forth in The Philadelphia Home Rule Charter, and state law, the Mayor has broad authority to set forth limitations on public activities during a state of national health emergency; and

**WHEREAS**, Sections 6-205 and 6-206 of The Philadelphia Code provides that the Department may forbid congregation of persons and such other measures, including closure of businesses when necessary to prevent the further spread of a communicable and quarantinable disease; and

**WHEREAS**, scientific evidence shows that preventing unnecessary close contact of individuals is an effective way to mitigate the spread of communicable diseases like COVID-19; and

**WHEREAS**, the Mayor of the City of Philadelphia and the Health Commissioner have determined that, in order to limit the spread of COVID-19, it is immediately necessary to forbid the operation of businesses that do not provide essential services to the public and activities that endanger public health, in accordance with the terms and conditions set forth herein;

**WHEREAS**, the best way for Philadelphia residents to keep themselves, their families, and their communities safe during the COVID-19 outbreak is to stay at home as much as possible;

**NOW**, **THEREFORE**, James F. Kenney, Mayor of the City of Philadelphia, and Dr. Thomas A. Farley, Health Commissioner of the City of Philadelphia, pursuant to all authority granted under the Philadelphia Home Rule Charter, The Philadelphia Code, the Regulations of the Board of Health of the City of Philadelphia, and Pennsylvania laws and regulations, hereby **ORDER** as follows:

**Section 1.**      **Prohibition on Operation of Non-Essential Businesses/Activities in Philadelphia**

      A.      No person or entity shall operate a non-essential place of business.  This prohibition does not apply to virtual or remote operations (*e.g.*, work from home).

2

B.    Essential Businesses may operate during the term of this Order and must observe the Social Distancing Rules of 4.

C.    Essential Businesses include all Life-Sustaining Businesses in the specific industry groups identified by the Governor of Pennsylvania, specifically those permitted in Natural Resources and Mining; Construction; Manufacturing; Trade, Transportation, & Utilities; Information; Financial Activities; Professional and Business Services; Education and Health Services; Leisure and Hospitality; and Other Services (Except Public Administration) (hereinafter, the "**Governor's Order**").

D.    In determining whether a business is a Life-Sustaining Business, the business should first refer to the Governor's Order and the list of Life-Sustaining Businesses. That list has been updated by the Commonwealth to conform with guidance on Essential Critical Infrastructure issued by the Department of Homeland Security, Cybersecurity and Infrastructure Security Agency. The City's Order should be interpreted to be consistent with the Governor's Order.

E.    The City of Philadelphia shall provide Philadelphia-specific definitions and examples of Life-Sustaining Businesses, which are defined as Essential Businesses and Activities below, in appropriate coordination with the Commonwealth. The City's Order may impose additional public health and safety restrictions above and beyond the Governor's Order.

F.    **Essential Retail Businesses and Activities**, includes the following:

1.    "Grocery Stores,"[1] including supermarkets, farmers' markets, convenience stores, and mini-markets; these stores should discourage non-shopping activity (leisure or idling) and manage store occupancy to allow for social distancing

2.    "Food Services," or restaurants limited to providing delivery service or pre-ordering online or via phone (strictly prohibited are walk-in ordering, dine-in service, and mobile food vendors, such as food trucks)

3.    "Automotive Parts, Accessories, and Tire Stores," including auto-repair shops but not any affiliated car dealerships

4.    "Gasoline Stations," including their convenience stores

5.    "Building Material and Supplies Dealers," including hardware stores, but not lawn and garden stores

6.    "Electronic Shopping and Mail-Order Houses," means establishments primarily engaged in retailing all types of merchandise using non-store means, such as catalogs, toll free telephone numbers, or electronic media

7.    "Other General Merchandise Stores," except department stores, includes:

    i.    Hardware stores supplying life-sustaining electrical, plumbing, heating, automotive parts, and other life-sustaining materials

---

[1]    Terms appearing in quotations are identified as a Sector, Subsector, or Industry Group in the Governor's Order.

    ii.  Pharmacies, drug stores, and retailers of prescription or nonprescription drugs, medicines, and essential healthcare products

8.   "Personal Household Goods Repair and Maintenance," includes:

    i.  Emergency or urgent household repairs (HVAC, plumbing, electrical, utilities, life-sustaining household appliances, telecommunications equipment) and repair and maintenance necessary to maintaining the safety, sanitation, and essential operation of home residences

    ii.  Bicycle or motorcycle repair shops

    iii.  Stores primarily engaged in repairing cell phones

9.   "Home Healthcare Services," includes in-home or home-based care for seniors, adults, or children (not to be confused with child daycare facilities)

10. "Postal Service" and "Couriers and Messengers," includes post offices, local messengers and local delivery, shipping and freight services, package delivery companies that deliver packages to residential buildings and offices, and companies that otherwise provide intercity, local, and/or international delivery of parcels and documents (including express delivery services)

11.  "Dry-cleaning and Laundry Services," includes laundromats

12. Consumer banks and credit unions using drive-through, ATM, and limited lobby services, which are permissible "Financial Activities"

13. Veterinary hospitals and services, and pet stores (which are "Other Miscellaneous Stores")

14. "Rooming and Boarding Houses" includes hotels

15. "Clothing Stores" that only or primarily sell essential uniforms and apparel for medical/healthcare professionals and public safety workers (police officers and firefighters)

16. "Automotive Equipment Rental and Leasing," includes establishments primarily engaged in renting or leasing passenger cars and trucks

17. "Services to Buildings and Dwellings," includes establishments primarily engaged in exterminating and controlling birds, mosquitoes, rodents, termites, and other insects and pests

G.    **Essential Infrastructure and Industrial Businesses and Activities**:

1.   "Construction" for:

    i.  All medical, pharmaceutical, and healthcare facilities (including non-emergency construction)

    ii.  All emergency projects or other projects deemed essential by the City of Philadelphia, while appropriately balancing public safety, to ensure the

continued delivery of critical infrastructure services and functions by the City ("City Essential Infrastructure Projects")

    iii.  Emergency repairs for "Residential Building Construction," "Nonresidential Building Construction," "Utility Subsystem Construction" (related buildings and structures for utilities, *i.e.*, water, sewer, petroleum, gas, power, and communication, and all structures that are integral parts of utility systems); "Highway, Street, and Bridge Construction," "Other Heavy and Civil Engineering Construction," "Foundation, Structure, and Building Exterior Contractors," Building Equipment Contractors," "Building Finishing Contractors," and "Other Specialty Trade Contractors"

2.  "Transit and Ground Passenger Transportation," which includes urban transit systems, taxi and limousine services, interurban and rural bus transportation, other transit and group passenger transportation (except Charter Bus Industry), and rideshare services (*see* Governor's Order for other categories)

3.  "Air, Rail, Water, Truck Transportation," and affiliated "Support Activities," which includes delivery and distribution services, and Philadelphia ports and port-related functions (*see* Governor's Order for other categories)

4.  "Waste Management and Remediation Services," which includes trash collection and essential sanitation or cleaning of public right of ways (*e.g.*, sidewalks and streets) (*see* Governor's Order for other categories)

5.  "Broadcasting," which includes radio and television broadcasting, and cable and other subscription programing (*see* Governor's Order for other categories)

6.  "Publishing industries," which includes newspapers, periodicals, books, magazines, and directory publishers (*see* Governor's Order for other categories)

7.  "Telecommunications" (except telecommunications resellers), which includes wireless telecommunications carriers (*see* Governor's Order for other categories)

8.  "Manufacturing," which includes all manufacturing of: food and beverages; medical supplies and equipment; HVAC equipment; plastics, rubber, cement/concrete, iron, steel, ferroalloy, and aluminum; semiconductor, electrical electromedical, navigational, control instrument components and products (*see* Governor's Order for other categories)

    i.  "Pharmaceutical and Medicine Manufacturing" is defined to include all essential activities and support activities related to ensuring the availability of in-vivo diagnostic substances and pharmaceutical preparations intended for internal and external consumption in dose forms, such as ampoules, tablets, capsules, vials, ointments, powders, solutions, and suspensions, as well as biological products, such as vaccines, toxoids, blood fractions, and culture media of plant or animal origin

    ii.  The prohibition on "Apparel Manufacturing" in the Governor's Order does not apply to the manufacturing or sale of essential uniforms and apparel for medical and healthcare professionals and public safety officers (*e.g.*, police officers and firefighters)

9. "Wholesale Trade," which includes all wholesale trade of: food, groceries, and related products; pharmaceutical medical, healthcare, and wellness products; medical supplies and equipment; life-sustaining public health products; and all permissible Retail Trade products under the Governor's Order (*see* Governor's Order for other categories)

10. "Professional Businesses and Services," which includes:

    i.   "Scientific Research and Development Services," *e.g.*, all essential research and development and support activity relating to Pharmaceutical and Medicine Manufacturing and biotechnology activity (*see* Governor's Order for other categories)

    ii.   *See* Section 3.C. regarding "Legal Services"

H. **Essential Healthcare and Social Services Businesses and Activities** include:

1. All medical or healthcare related services and support services, including "Hospitals"; "Nursing and Residential Care Facilities"; "Ambulatory Health Care Services" (offices of physicians, dentists, and other health practitioners); urgent care facilities; and mental and behavioral health providers

2. "Social Assistance" includes businesses that provide essential food, shelter, and critical social services for economically disadvantaged or otherwise needy individuals are not prohibited from providing essential food, shelter, and services; and residential facilities and shelters for seniors, adults, and children

I. **Essential Governmental Functions** includes all services needed to ensure the continuing operation of the government agencies and provide for the health, safety and welfare of the public, including City Essential Infrastructure Projects.

J. **Essential Educational Functions** include:

1. Elementary and secondary schools maintaining preparation and distribution of meals for children (with essential staff only)

2. Colleges and universities supporting residence halls where students must reside (with essential staff only)

Additional Essential Businesses may be determined by the Department of Public Health, consistent with the Governor's Order, and shall be identified at phila.gov/COVID-19.

**Section 2.**    **Prohibition on Operation of Office-Based Businesses**

A.    No office-based or co-working space business or organization, other than an Essential Business, may operate the business generally with personnel located in such office.

B.    Businesses required to suspend physical operations may only have essential on-site personnel to maintain critical functions, such as security, processing of essential operations (*e.g.*, payroll and benefits for employees; maintaining remote technology infrastructure; and facilitating "Facilities Support Services" permitted by the Governor's Order, which are services such as

janitorial, maintenance, trash disposal, guard and security, mail routing, and reception).  Businesses are also permitted to maintain essential on-site personnel to ensure compliance with federal, state and local regulatory requirements, and for the safety and security of essential government services. All businesses must follow social distancing and COVID-19 mitigation guidance provided by the U.S. Center for Disease Control, the Pennsylvania Department of Health, and the Philadelphia Department of Public Health.  The business and activities described in this section are "**Essential Minimum Basic Operations**."

**Section 3.      Other Non-Essential Businesses and Activities**

A.      Businesses that are not listed as Essential Businesses or Life-Sustaining by the Commonwealth are non-essential businesses.  For the avoidance of doubt, non-essential retail businesses that cannot operate include, among other things, movie theaters, clothing-only stores, fitness clubs (yoga, barre, and spin facilities), personal care salons (hair salons, barbershops, and nail salons), arts and music venues, tour operators, social clubs, night clubs, bars, electronic and appliance stores, amusement facilities, food trucks, ice cream trucks, car dealerships, florists, office supply stores, stationery stores, book stores, furniture stores, gift stores, event halls, and shopping malls.

B.      Child daycare facilities are non-essential businesses, unless they obtain a waiver to operate from the Commonwealth of Pennsylvania or the City of Philadelphia.

C.      "Legal Services," specifically the practice of law, is governed by the rules established by the Supreme Court of Pennsylvania and/or the Administrative Office of Pennsylvania Courts. Restricted access to law offices and facilities by legal professionals, staff, and clients is permitted to the degree necessary to allow attorneys to participate in court functions deemed essential by a president judge per the Supreme Court's order of March 18, 2020 or orders of the courts of the United States, so long as social distancing and other mitigation measures are employed for the protection of lawyers, staff, and clients.  Pursuant to the Governor's Order, all other business must be conducted remotely; necessary retrieval of files or other materials should be accomplished expeditiously.

D.      Operators of non-life sustaining, non-emergency construction in Philadelphia shall have until 5:00 p.m. on March 27, 2020, to make construction sites safe and secure.  Contractors are directed to take proper measures to protect adjacent properties, remove or fasten items that are or could become loose, secure sites against trespass, and complete work necessary to protect and ensure the structural integrity of buildings under construction.  Occupied residential properties must be left in safe and habitable condition.

E.      No storefront businesses may open or operate their storefronts unless they are Essential Businesses.

**Section 4.      Social Distancing Rules**

A.      Any business operating under and during the term of this Order must adhere to Social Distancing Rules, which include making efforts to maintain at least six (6) feet of space between individuals; frequently washing hands with soap and running water for at least twenty (20) seconds

and/or using hand sanitizer, refraining from shaking hands; covering coughs or sneezes with a sleeve or elbow (not hands); and regularly cleaning frequently touched surfaces, such as desks, tables, countertops, computers, phones, and door handles.

      B.     Businesses permitted to perform emergency household maintenance and repair services under this Order must: require the customer to clean and sanitize the work are prior to arrival; sanitize the work area themselves before and after completing the work; ask that occupants keep a personal distance of 10-feet at a minimum during work;  and allow in the residence only the number of workers necessary to complete the emergency maintenance or repair.

### Section 5.　　Gatherings of Individuals

All public and private gatherings of any number of people occurring outside a single household or living unit are prohibited, except for the limited purposes permitted by this Emergency Order.  This does not apply to activities related to Essential Businesses and Activities or Essential Personal Activities, which must observe the requirements under 4.A.

### Section 6.　　Stay at Home Order

      A.     All Philadelphia residents shall remain home or at their place of residence unless they are engaged in **Essential Personal Activities**, which include:

    1. obtaining essential goods or services from Essential Businesses, such as obtaining pre-ordered takeout food or beverages from restaurants, acquiring groceries, obtaining medical prescriptions or supplies, or any other products from Essential Businesses for themselves, family, household members, and pets

    2. seeking any form of medical attention, including through Essential Healthcare and Social Services Businesses and Activities, or seeking assistance from law enforcement or emergency services for themselves, family, household members, and pets

    3. caring for family members, friends, or a pet in another household, including delivering essential goods or obtaining emergency services and attention

    4. reporting to, or performing, their job related to Essential Business, Essential Minimum Operations, or Essential Government Function

    5. walking, running, cycling, operating a wheelchair, or engaging in outdoor activities with immediate family members, caretakers, household members, or romantic partners while following Social Distancing Rules with other individuals, which includes staying six feet apart

    6. leaving the home for an educational, religious, or political reason

8

7. leaving because of a reasonable fear for health or safety

8. leaving at the direction of law enforcement or other government agency

9. engaging in any other activities or performing tasks essential to health and safety, or to the health and safety of themselves, family, household members, or pets

B.   Individuals experiencing homelessness are exempt from this directive, but are strongly urged to obtain shelter, and City agencies and other entities are strongly urged to make such shelter available as soon as possible and to the maximum extent practicable(and to use in their operation COVID-19 risk mitigation practices recommended by the U.S. Center for Disease Control, the Pennsylvania Department of Health, and the Philadelphia Department of Public Health).  Individuals whose residences are unsafe or become unsafe, such as victims of domestic violence, are permitted and urged to leave their home and stay at a safe alternative location.


**Section 7.   Exemptions from the Governor's Order**

A.   In extenuating circumstances, special exemptions to the Governor's Order will be granted by the Commonwealth.   Businesses seeking a waiver should comply with the Governor's Order and suspend in-person, physical operations until a waiver is approved and provided.

B.   Businesses performing Essential Governmental Functions, including essential Construction for the City of Philadelphia need not obtain an exemption from the Commonwealth.

**Section 8.     Effective Date and Duration**

This Order shall supersede the Emergency Order issued by the Health Commissioner dated March 12, 2020, which forbade mass gatherings, and the Emergency Order issued by the Mayor and Health Commissioner dated March 17, 2020, which prohibited operation of non-essential businesses.  This Order shall become effective as of **Monday, March 23 at 8:00 AM**, and shall remain in effect indefinitely, until rescinded, superseded, or amended by further Order.  Failure to comply with this Order shall result in orders to cease operations and the imposition of such other remedies and penalties as provided for by law.


Date:   March 22, 2020

James F. Kenney, Mayor
City of Philadelphia


Thomas A. Farley, MD, MPH
Health Commissioner
City of Philadelphia



### CITY OF PHILADELPHIA

### OFFICE OF THE MAYOR
### DEPARTMENT OF PUBLIC HEALTH

### EMERGENCY ORDER ALLOWING LIMITED REOPENING OF BUSINESSES, ADVISING PHILADELPHIANS THAT THEY ARE SAFER AT HOME, AND ESTABLISHING SAFETY MEASURES TO PREVENT THE SPREAD OF 2019 NOVEL CORONAVIRUS (COVID-19)

### YELLOW PHASE OF REOPENING

**WHEREAS,** the 2019 novel coronavirus disease, COVID-19, can cause severe disease and death, particularly in older adult and other vulnerable populations; and

**WHEREAS,** on March 6, 2020, in response to the emerging spread of COVID-19, the Governor of Pennsylvania issued a Proclamation of Disaster Emergency; and

**WHEREAS,** on March 11, 2020, the World Health Organization declared the COVID-19 outbreak a pandemic, or global epidemic; and

**WHEREAS,** on March 12, 2020, the City's Board of Health by emergency regulation added COVID-19 to the City's list of reportable and quarantinable diseases; and

**WHEREAS,** on March 17, 2020, the Mayor and the Health Commissioner jointly issued an Emergency Order prohibiting operation of non-essential businesses to prevent the spread of COVID-19; and

**WHEREAS,** on March 19, 2020, the Governor and the Secretary of the Pennsylvania Department of Health issued orders requiring all non-life-sustaining businesses to close across the Commonwealth, to help stop the spread of the virus and the Governor and Secretary updated the aforementioned orders and list of life-sustaining and non-life sustaining businesses on March 20, 2020 and multiple times thereafter; and

**WHEREAS,** on March 22, 2020, the Mayor and the Health Commissioner jointly issued an Emergency Order Temporarily Prohibiting Operation of Non-Essential Businesses and Congregation of Persons to Prevent the Spread of COVID-19, which superseded the Emergency Order issued by the Mayor and Health Commissioner dated March 17, 2020, and which was approved as a regulation of the City by the Board of Health on March 26, 2020, which expressly authorized the Health Commissioner to issue such additional orders as the

Commissioner determines are necessary or appropriate to limit the spread of COVID-19 ("the March 22, 2020 Emergency Order"); and

**WHEREAS**, on March 23, 2020, the Governor of Pennsylvania issued a Stay-at-Home Order that applies to Philadelphia and numerous surrounding counties; and

**WHEREAS**, on April 15, 2020, the Secretary of Health of the Commonwealth of Pennsylvania issued an Order "Directing Public Health Safety Measures for Businesses Permitted to Maintain In-person Operations," which requires comprehensive safety measures to be employed in all businesses maintaining physical operations, including standards for cleaning and disinfecting high-touch areas, establishing protocols for businesses exposed to probable or confirmed cases of COVID-19, limiting the numbers of employees on the premises and ensuring access to protective and sanitary equipment and supplies; and

**WHEREAS**, on April 20, 2020, the Governor and the Secretary of Health of the Commonwealth issued amendments to their March 19, 2020 orders concerning the closure of business that are not life sustaining to authorize, *inter alia*, "limited construction activity" that would be authorized to commence in-person operations, provided such activity followed strict guidance related to mitigation measures described by the federal Centers for Disease Control and Prevention and the requirements of the Pennsylvania Secretary of Health's April 15, 2020 Order; and

**WHEREAS**, on April 23, 2020, the Governor announced a *Plan for Pennsylvania* that set residents and businesses on a path to recovery from the COVID-19 pandemic while continuing to protect life from the dangers of this deadly virus, which included, *inter alia*, Red, Yellow, and Green Phases of reopening; and

**WHEREAS**, the Mayor and the Health Commissioner issued an Order on April 29, 2020, entitled "Authorization for the Conduct of Certain Construction Activity Currently Prohibited by the March 22, 2020 Emergency Order," which Construction Authorization was adopted as a regulation of the Board of Health on April 29, 2020 (effective April 30, 2020); and

**WHEREAS,** on May 22, 2020, the Governor of Pennsylvania announced that Philadelphia, among other counties, are "expected to move" to the Yellow Phase of reopening by June 5, 2020; and

**WHEREAS,** on May 26, 2020, the Mayor and the Health Commissioner issued an Order further amending the March 22, 2020 Emergency Order to allow additional construction activity to commence, allowing the real estate industry in Philadelphia to resume activities;

and allowing walk-up ordering and the operation of mobile vending, including by food trucks, all in accordance with specified and applicable health and safety precautions; and

**WHEREAS,** Philadelphians are working hard to turn back COVID-19, and they are succeeding; because of social-distancing actions and the stay-at-home order, as of mid-May 2020, daily COVID-19 case counts had fallen to about half those of mid-April and were still declining; and

**WHEREAS**, the Mayor and Health Commissioner recognize that COVID-19 will not be eradicated from the region for many months at least, and if Philadelphians simply resume their previous activities now, the epidemic will resurge; and

**WHEREAS,** the Mayor and Health Commissioner have determined that Philadelphia may move to the Yellow Phase with additional, Philadelphia-specific restrictions during the Yellow Phase that will apply in addition to restrictions established by the Governor; and

**WHEREAS,** the Governor's Yellow Phase anticipates lifting of the Commonwealth's Stay-At-Home Order, and the Mayor and Health Commissioner have determined that the City's Stay-At Home Order shall also be lifted at the same time, while recognizing that Philadelphians are safer at home and are advised not to attend social gatherings of any size until the Governor and City move Philadelphia into the Green Phase; and

**WHEREAS,** on or around May 28, 2020, the City's Department of Public Health released *Safe Mode: Guidelines for Safer Operations During the COVID-19 Pandemic*, which provides specific reopening guidance for types of facilities that may be able to open or expand operations when we reach the Yellow Phase; and

**WHEREAS**, pursuant to authority set forth in The Philadelphia Code and inherent authority set forth in The Philadelphia Home Rule Charter, the Mayor has broad authority to set forth limitations on public activities during a state of national health emergency; and

**WHEREAS**, Sections 6-205 and 6-206 of The Philadelphia Code provide that the Department may by order forbid the congregation of persons when necessary to prevent the further spread of a communicable and quarantinable disease and may take such other measures as are necessary to prevent the spread of such disease; and

**NOW, THEREFORE**, James F. Kenney, Mayor of the City of Philadelphia, and Dr. Thomas A. Farley, Health Commissioner of the City of Philadelphia, pursuant to all authority granted under the Philadelphia Home Rule Charter, The Philadelphia Code, the Regulations of the Board of Health of the City of Philadelphia and applicable state law, hereby **ORDER** as follows:

**Section 1.      Limited Opening of Non-Essential Businesses & Activities in Philadelphia**

A.      The City's March 22, 2020 Emergency Order prohibiting operation of non-essential businesses and activities to prevent the spread of COVID-19, as subsequently amended, is hereby revised pursuant to the terms of this Order and superseded to the extent inconsistent with this Order.  On the Effective Date, as defined in Section 6, the restrictions and allowances of the Governor's Yellow Phase as stated in the *Plan for Pennsylvania* or any consistent order from the Governor are adopted, subject to the City's interpretations, additional restrictions, or guidelines established in this Order, and as may be subsequently amended.

B.      During the Yellow Phase:

   1.   Businesses that had been conducting operations remotely, in whole or in part, under the *Order of the Governor Regarding The Closure of All Businesses That are Not Life Sustaining* of March 19, 2020 and the City's March 22, 2020 Emergency Order (collectively the Red Phase Orders) must continue to conduct such operations remotely.  Such businesses may not commence in-person business operations for those business functions that have been able to operate remotely.

   2.   Except as otherwise provided in this Order, businesses that have not been able to conduct all or certain operations under the Red Phase Orders because such operations are not conducive to functioning remotely are authorized to commence such in-person operations in accordance with applicable safety requirements and guidance.

   3.   Businesses that were permitted to conduct in-person operations under the Red Phase Orders may continue in-person operations in accordance with all applicable orders and guidance that are required of such in-person operations during the Red Phase, including any industry-specific orders and guidance issued by the Commonwealth and City, all as may be further amended.

   4.   Consistent with the Governor's Order, the following businesses and activities remain prohibited:

      a.   Indoor recreation, such as indoor sports or training, bowling, arcades, racquetball, racing, gaming halls, pool halls, indoor miniature golf, and other similar facilities;

      b.   Activities in entertainment facilities, such as casinos, theaters, museums, zoos, concerts, social clubs, carnivals, amusement parks, semiprofessional or amateur sports, and other similar facilities;

      c.   Health and wellness facilities and personal care services, such as gyms, spas, saunas, barbershops, hair salons, nail salons, tattoo and piercing shops, tanning salons, massage therapy providers, and other similar facilities;

d. Indoor malls, including interior businesses, and other similar facilities, except pharmacies or healthcare tenants and tenants with external entrances adhering to applicable business guidance;

e. Outdoor group recreational activities, such as sports leagues, organized and unorganized group sports, competitive events, and similar activities;

1. Professional sports teams must adhere to the industry-specific guidance issued by the Commonwealth for professional sports, which includes prohibitions on onsite spectators and requires development of a COVID-19 safety plan approved by the Commonwealth, according to the Commonwealth's *Life Sustaining Business Frequently Asked Questions*, as updated on May 22, 2020;

f. On-site dining at restaurants and cafes remains prohibited;

1. Outdoor dining at restaurants and cafes remains prohibited in Philadelphia, notwithstanding the Commonwealth's guidance that dining in outdoor seating is permitted starting June 5, 2020 for counties in the Yellow Phase.  The City may issue an order permitting outdoor dining in Philadelphia on a date later than June 5, 2020;

2. Carry-out, delivery, drive-thru, and walk-up ordering remain permitted;

3. Restaurants and food vendors shall not permit lines of more than ten (10) customers to form in or around their locations; and

4. Customers and employees must wear masks while orders are being placed in addition to following all other applicable rules and guidance.

5. Summer camps may operate in accordance with the Commonwealth's guidance for *Summer Recreation, Camps, and Pools* issued on May 22, 2020, and applicable City guidance, except that the City prohibits swimming pools in Philadelphia from reopening during the Yellow Phase.

6. City playgrounds are permitted to reopen for summer camp and individual family activities for children only, which does not include group recreational activities prohibited in other parts of this Order.

7. Child care providers may operate in accordance with applicable guidance from the Commonwealth and must familiarize themselves with and be prepared to implement guidance issued by the Centers for Disease Control and Prevention, which outlines the steps providers should take to keep child care spaces safe and to properly monitor staff and children for potential exposure to and symptoms of COVID-19.

**Section 2.**     **Business Safety Rules During the Yellow Phase**

A.     Businesses permitted to conduct operations during the Yellow Phase shall conduct operations in accordance with the Commonwealth's *Guidance for Businesses Permitted to Operate During the COVID-19 Disaster Emergency to Ensure the Safety and Health of Employees and the Public*, as subsequently amended, and all orders and guidance cited therein, and all applicable City orders and guidance, including the City of Philadelphia *Safe Mode: Guidelines for Safer Operations During the COVID-19 Pandemic*, as amended, the requirements of which this Order identifies specifically as follows:

1.   **Universal Masking.**  Businesses must provide masks for all onsite employees, who must wear masks while on-duty.  Customers and visitors must also wear masks.  Businesses must comply with all other industry-specific requirements for masking and personal protective equipment (PPE).

2.   **Isolation Protocols.** Employers must prevent an employee from remaining onsite if they have COVID-19 related symptoms.  If an employee develops a COVID-19 infection or receives a positive test result, businesses and other organizations must take additional precautions to stop the virus from spreading further, as described in the City's *Guidance for Essential Businesses and Organizations During COVID-19* issued on April 20, 2020.  Employers must report positive cases to the Philadelphia Department of Public Health.

3.   **Clear Barriers.**  Businesses that can permit members of the public inside their premises and engage with them at sales counters, customer service stations, security and information desks, and similar locations must install clear plastic barriers between employees and customers and/or visitors that can block the path of respiratory droplets, except that retail businesses with less than 2000 square feet of space open to the public are not required to install clear plastic barriers until 30 days after the Effective Date and are advised to install the barriers as soon as practicable after the Effective Date.

4.   **Social Distancing.**  Businesses must create and enforce policies that require social distancing onsite and adhere to industry-specific social distancing guidelines issued by the Commonwealth and City.

5.   **Crowd Reduction.** All businesses must manage occupancy and capacity as necessary to ensure social distancing and reduce crowding, and specifically:

- retail shopping businesses must limit entry to a maximum of 5 total customers for every 1,000 square feet of public space in the facility;

- offices, excluding healthcare providers, must limit entry to a maximum of 5 total persons for every 1,000 square feet of space in the facility; and

- all other businesses must continue to adhere to any industry specific-orders and guidance regarding crowd-reduction issued by the Commonwealth or City.

6. **Handwashing.** Businesses must install handwashing stations or hand sanitizer at entryways and outside communal bathrooms for all staff, customers, and visitors, with prominent signage promoting use, and maintain compliance with any industry-specific handwashing or hand-sanitizing guidelines issued by the Commonwealth and City.

7. **Cleaning.** Businesses must establish protocols and follow them for disinfecting high-touch surfaces, shared equipment, shared seating, or shared tools with disinfectant at least every four hours, and maintain compliance with industry-specific cleaning guidelines issued by the Commonwealth and City.

8. **Communication.** Businesses must establish and execute protocols for educating employees about symptoms and prevention of COVID-19. Businesses must post signs prominently at entrances and employee breakrooms advising employees and customers or visitors of, at a minimum: universal masking requirements; applicable quarantine and isolation protocols; social distancing; and handwashing or sanitizing protocols.

B. If emergency safety orders or safety guidance documents from multiple government agencies differ or conflict, the Philadelphia Department of Public Health recommends that businesses follow the most restrictive order or guidance applicable to their industry or business.

## Section 3.    Gatherings of Individuals

The Governor's Yellow Phase prohibition on gatherings of more than twenty-five (25) people shall be enforceable under the law. Philadelphia residents are advised that the Philadelphia Department of Public Health recommends that no public and private gatherings, of any number of people, outside a single household or living unit should occur until Philadelphia moves to the Green Phase.

## Section 4.    Suspension of Stay-At-Home Order; Advising Residents That They Are "Safer At Home"

The City suspends the portion of the March 22 Order directing individuals to stay-at-home, consistent with the Governor's suspension of stay-at-home orders for the Yellow Phase, subject to all other limitations of this Order. Notwithstanding the lifting of stay-at-home orders, the Philadelphia Department of Public Health advises Philadelphia residents that they are safer at home, and all Philadelphia residents have a responsibility to themselves and to each other to protect our city and our communities.

**Section 5.      Interpretation of City Emergency Orders**

      Unless otherwise stated, this Order shall be interpreted as consistent with applicable orders and requirements of the Commonwealth of Pennsylvania.  The City shall continue to adhere to waivers, exemptions, or recategorizations issued by the Commonwealth from its emergency orders, subject to all applicable laws and regulations.  The City shall continue reviewing inquiries and submissions regarding the applicability of the City's orders to businesses and activities.

**Section 6.      Effective Date and Duration**

      This Order revises and supersedes the March 22 Emergency Order, as amended, in all respects in which it is inconsistent with such Order.  This Order shall become effective on the effective date and time determined by the Governor that the City of Philadelphia should move into the Yellow Phase, which is currently expected to be June 5, 2020 at 12:01 AM (the "Effective Date").  This Order shall remain in effect until rescinded, superseded, or amended by further Order.  Failure to comply with this Order shall result in orders to cease operations and the imposition of penalties, fines, license suspensions, and other remedies as provided for by law.

Date:  May 29, 2020

James F. Kenney, Mayor
City of Philadelphia

Thomas A. Farley, MD, MPH
Health Commissioner
City of Philadelphia

8



**CITY OF PHILADELPHIA**

**OFFICE OF THE MAYOR**
**DEPARTMENT OF PUBLIC HEALTH**

**AMENDMENT REGARDING ADDITIONAL PERMITTED ACTIVITES TO THE**

**EMERGENCY ORDER ALLOWING LIMITED REOPENING OF BUSINESSES, ADVISING PHILADELPHIANS THAT THEY ARE SAFER AT HOME, AND ESTABLISHING SAFETY MEASURES TO PREVENT THE SPREAD OF 2019 NOVEL CORONAVIRUS (COVID-19)**

**MOVING FROM YELLOW PHASE OF REOPENING
TO MODIFIED GREEN PHASE**

**WHEREAS**, the 2019 novel coronavirus disease, COVID-19, can cause severe disease and death, particularly in older adult and other vulnerable populations; and

**WHEREAS**, on March 6, 2020, in response to the emerging spread of COVID-19, the Governor of Pennsylvania issued a Proclamation of Disaster Emergency; and

**WHEREAS**, on March 11, 2020, the World Health Organization declared the COVID-19 outbreak a pandemic, or global epidemic; and

**WHEREAS**, on March 12, 2020, the City's Board of Health by emergency regulation added COVID-19 to the City's list of reportable and quarantinable diseases; and

**WHEREAS,** on March 17, 2020, the Mayor and the Health Commissioner jointly issued an Emergency Order prohibiting operation of non-essential businesses to prevent the spread of COVID-19; and

**WHEREAS,** on March 19, 2020, the Governor and the Secretary of the Pennsylvania Department of Health issued orders requiring all non-life-sustaining businesses to close across the Commonwealth, to help stop the spread of the virus and the Governor and Secretary updated the aforementioned orders and list of life-sustaining and non-life sustaining businesses on March 20, 2020 and multiple times thereafter; and

**WHEREAS**, on March 22, 2020, the Mayor and the Health Commissioner jointly issued an Emergency Order Temporarily Prohibiting Operation of Non-Essential Businesses and

1

Congregation of Persons to Prevent the Spread of COVID-19, which superseded the Emergency Order issued by the Mayor and Health Commissioner dated March 17, 2020, and which was approved as a regulation of the City by the Board of Health on March 26, 2020, which expressly authorized the Health Commissioner to issue such additional orders as the Commissioner determines are necessary or appropriate to limit the spread of COVID-19; and

**WHEREAS**, on April 15, 2020, the Secretary of Health of the Commonwealth of Pennsylvania issued an Order "Directing Public Health Safety Measures for Businesses Permitted to Maintain In-person Operations," which requires comprehensive safety measures to be employed in all businesses maintaining physical operations, including standards for cleaning and disinfecting high-touch areas, establishing protocols for businesses exposed to probable or confirmed cases of COVID-19, limiting the numbers of employees on the premises and ensuring access to protective and sanitary equipment and supplies; and

**WHEREAS**, on April 23, 2020, the Governor announced a *Plan for Pennsylvania* that set residents and businesses on a path to recovery from the COVID-19 pandemic while continuing to protect life from the dangers of this deadly virus, which included, *inter alia*, Red, Yellow, and Green Phases of reopening; and

**WHEREAS,** the Mayor and Health Commissioner determined on May 29, 2020, that Philadelphia could move to the Yellow Phase with additional, Philadelphia-specific restrictions that would apply in addition to restrictions established by the Governor, including limitations on outdoor dining, and executed an Order entitled "Emergency Order Allowing Limited Reopening of Businesses, Advising Philadelphians hat They are Safer at Home, and Establishing Safety Measures to Prevent the Spread of 2019 Novel Coronavirus (COVID-19):  Yellow Phase of Reopening" ("Yellow Phase Order") to implement that decision, effective on the date determined by the Governor that the City of Philadelphia should move into the Yellow Phase; and

**WHEREAS,** on or around May 28, 2020, the City's Department of Public Health released *Safe Mode: Guidelines for Safer Operations During the COVID-19 Pandemic*, which provides specific reopening guidance for specific types of facilities that may be able to open or expand operations during the Yellow Phase; and

**WHEREAS**, on June 4, 2020, the Governor and Secretary of Health amended their respective orders for Limited Opening of Businesses, Lifting of Stay at Home Requirements, and Continued Aggressive Mitigation Efforts, to apply to Philadelphia effective June 5th, which generally moved the City into the Yellow Phase pursuant to the Governor's guidelines; and

**WHEREAS**, since that time, the Mayor and Health Commissioner, in recognition that cautious reopening with constant review of potential impacts on public health is in the best interests of Philadelphia, have issued a series of Orders gradually easing restrictions with respect to, *inter alia,* outdoor dining, use of pools and personal grooming services;

**WHEREAS**, although the Governor announced that Philadelphia was authorized to join other southeastern Pennsylvania counties in moving to the Green Phase of reopening on June 26, 2020, the Mayor and Health Commissioner, in consideration of public health data and the noted effects on public health in June in states that have hastily reopened, including marked increases of positively identified COVID-19 cases, has taken a cautious approach to moving to the Green Phase; and

**WHEREAS,** Philadelphians are working hard to turn back COVID-19, and they are succeeding.  Because of social-distancing actions and the various City Orders protecting the public health, daily COVID-19 case counts have fallen significantly from counts in mid-April and mid-May. The rate of community spread of COVID-19 in Philadelphia remains high, however, and measures to continue to reduce its spread must be maintained and observed; and

**WHEREAS**, on June 26, 2020, the Mayor and Health Commissioner issued an order requiring the wearing of masks in many indoor and outdoor situations, and on July 1, 2020, the Secretary of Health issued a similar order; and

**WHEREAS**, the Mayor and Health Commissioner have determined that, under applicable safety requirements and guidelines, certain additional activities are within the range of acceptable activities that may resume in a modified Green Phase of reopening; and

**WHEREAS**, pursuant to authority set forth in The Philadelphia Code and The Philadelphia Home Rule Charter, the Mayor has broad authority to set forth limitations on public activities during a state of national health emergency; and

**WHEREAS**, Sections 6-205 and 6-206 of The Philadelphia Code provide that the Department of Public Health may by order forbid the congregation of persons when necessary to prevent the further spread of a communicable and quarantinable disease and may take such other measures as are necessary to prevent the spread of such disease;

**NOW**, **THEREFORE**, James F. Kenney, Mayor of the City of Philadelphia, and Dr. Thomas A. Farley, Health Commissioner of the City of Philadelphia, pursuant to all authority granted under the Philadelphia Home Rule Charter, The Philadelphia Code, the Regulations of the Board of Health of the City of Philadelphia and applicable state law, hereby **ORDER** as follows:

**Section 1.      Additional Activities Permitted In the Move to a Modified Green Phase.**

The following activities may be resumed, provide they are conducted pursuant to all applicable guidance and requirements of the Commonwealth and the City, including occupancy and capacity limitations, masking and social distancing requirements:

a.      Shopping malls;

b.      Schools at all levels, including primary, secondary (high school), trade and technical schools and higher education;

c.      Libraries and museums;

d.      Formally organized and non-organized outdoor sports activities for youths and adults;

e.      Casinos, provided that food and beverage service and smoking are not permitted in any indoor area;

f.      Outdoor gatherings and small events of up to 50 people.

g.      Indoor gatherings of up to 25 people.

h.      Drive in events, where individuals remain in their own vehicles for the duration of the event with limited exceptions to obtain food or use restroom facilities, of up to 250 people.

**Section 2.   Certain Operations that Remain Prohibited.**

a.      Indoor dining, the operation of gyms and indoor fitness facilities, and the operation of indoor theaters and indoor performances remain prohibited at this time.

b.      Indoor gatherings of more than 25 people remain prohibited at this time.

**Section 3.      Interpretation and Implementation.**

a.      Unless otherwise stated, this Order shall be interpreted as consistent with applicable orders and requirements of the Commonwealth of Pennsylvania.  The City shall continue to adhere to waivers, exemptions, or recategorizations issued by the Commonwealth from its emergency orders, subject to all applicable laws and regulations.  The City shall continue reviewing inquiries and submissions regarding the applicability of the City's orders to businesses and activities.

b.      Failure to comply with this Order shall result in orders to cease operations and the imposition of penalties, fines, license suspensions, and other remedies as provided for by law.

c.      This Order supplements the Yellow Phase Order, as amended, and shall remain in effect until rescinded, superseded, or amended by further Order.

Date:   July 3, 2020

_____
James F. Kenney, Mayor
City of Philadelphia

_____
Thomas A. Farley, MD, MPH
Health Commissioner
City of Philadelphia